## Snyder *versus* Carfrey.

1. The Act of December 14th 1863 was designed to give landlords a remedy to dispossess tenants more convenient than the Act of 1772, and should have the same liberal interpretation and administration as has been extended to the latter act.

2. Proceedings under such statutes though summary, are not to be criticised with the extreme strictness that is applied to summary convictions under penal statutes.

3. The relation of landlord and tenant rests in contract and involves mere rights of property; the remedies are purely civil, not in the slightest degree penal.

4. In proceedings between landlords and tenants before justices of the peace, no unattainable precision of procedure should be exacted, but only such substantial compliance with the letter and spirit of the statute, as would generally be within the competence of the magistrates.

5. Under a lease for one year from May 15th 1865, notice on the 10th of January 1866 " to remove at the end of the said term of one year," was sufficient notice.

6. A service of a summons " personally on defendant at his dwelling-house, by leaving a copy of the original summons and making known the contents thereof," is a sufficient service of any summons.

7. That the judgments of a justice have been *publicly* given, is to be presumed from the public character of the officer. He pronounces his judgments in his office and they are public.

January 15th 1867. Before WOODWARD, C. J., THOMPSON, READ and AGNEW, JJ. STRONG, J., at Nisi Prius.

[Snyder *v.* Carfrey.]

Error to the Court of Common Pleas of *Philadelphia.*

This was a proceeding under the Act of December 14th 1863, commenced June 2d 1866, before John White, an alderman of Philadelphia, by John S. Snyder, trustee, against William R. Carfrey, to recover possession of premises leased by plaintiff to the defendant.

The record of the alderman showed, that on the 8th day of June 1866, due proof was made before him that John S. Snyder, trustee, on the 15th day of May 1865, was quietly and peaceably possessed of a certain messuage, &c., and on the same day demised the said premises to William R. Carfrey, for the term of one year then next ensuing, and that the said William R. Carfrey entered into possession of the premises, held the same during said term of one year, and is still possessed of the same, and that the said term is fully ended; that the said John S. Snyder, being desirous upon the termination of the said term to repossess the premises, did on the 10th day of January 1866, require the said William R. Carfrey, to remove from the same, and the said William R. Carfrey refused to comply with the said requisition, &c., whereupon John S. Snyder, trustee, on the 2d day of June 1866, prayed the said alderman that a due remedy in that behalf be provided for him, &c., upon which proof and complaint Dennis Mead, constable, &c., was commanded to summon the said William R. Carfrey to be and appear before the said alderman, on the 8th day of June 1866, to show cause why restitution of the said possession of the said demised premises should not be forthwith made to the aforesaid John S. Snyder, and on the 8th day of June 1866, Dennis Mead, constable, &c., made return upon oath that he had served the said summons upon the said William R. Carfrey personally at his dwelling by leaving him a copy of the original, and making known the contents thereof, and complainant appears, defendant does not, and the plaintiff was permitted to produce his testimony, when due and legal proof by the examination of disinterested and competent witnesses as well as by written testimony was made before the said alderman, that the said John S. Snyder, trustee as aforesaid on the 15th day of May 1865, was quietly and peaceably possessed of a certain messuage, &c., being so possessed on the same day and year, did demise the said premises to the said William R. Carfrey for the term of one year then next ensuing. That the said William R. Carfrey by virtue of the said demise entered into possession of the said demised premises, and held the same during the said term of one year, and is still possessed of the same, and that the term for which the said premises were demised as aforesaid is fully ended, and that the said John S. Snyder, being desirous upon the termination of said demise and term, to have again and repossess himself of the said premises, for that purpose did on the 10th day of January

[Snyder *v.* Carfrey.]

1866, require the said William R. Carfrey to remove and leave the same at the end of the said term of one year, and the. said William R. Carfrey hath hitherto refused and still doth refuse to comply with the requisition ; and now this 8th day of June 1866, after hearing the complainant, his proofs and allegations and due and legal proof of the facts before the said alderman, he finds that the said complaint and facts therein stated and proved are true, and hereby enters judgment against William R. Carfrey the said defendant, that he forthwith give up possession of the said premises above mentioned and described, to the said John S. Snyder, trustee as aforesaid, &c.

The proceedings were removed by certiorari to the Court of Common Pleas, and the following amongst other exceptions were taken :—

1. It is apparent from the record, that the party complainant is not competent to bring this action and to maintain these proceedings under. the Act of 1863.

2. It does not appear from the record, that three months' notice was given prior to the expiration of the term, to surrender up the possession of the premises at the termination of the term.

3. It does not appear from the record that the summons was served the number of days. before the return day thereof as required by law.

4. The summons was not served according to law.

The Court of Common Pleas reversed the proceedings. The plaintiff took a writ of error and assigned the reversal for error.

*A. V. Parsons*, for plaintiff in error, cited Act of December 14th 1863, Purd. 1341; McMillan *v.* Graham, 4 Barr 140 ; Steele *v.* Thompson, 3 Penna. R. 38 ; White *v.* Arthurs, 12 Harris 96 ; Cunningham *v.* Gardner, 4 W. & S. 125 ; Boggs *v.* Black, 1 Binn. 336 ; Wharton *v.* Fisher, 2 S. & R. 183 ; Act of March 20th 1810, § 2, Purd. 594, pl. 37 ; 5 Sm. L. 162 ; Kleckner *v.* Lehigh Co., 6 Wh. 66 ; Wilson *v.* Hayes, 6 Harris 354 ; Commonwealth *v.* Dalling, 2 Pars. R. 286.

*John Roberts*, for defendant in error, cited Act of December 14th 1863 ; Fahnestock *v.* Faustenhauer, 5 S. & R. 174 ; McGee *v.* Fessler, 1 Barr 126 ; Hohly *v.* German Reformed Society, 2 Barr 293 ; Wharton *v.* Fisher, 2 S. & R. 180 ; Fraily *v.* Sparks, 2 Pars. 232 ; Commonwealth *v.* Dalling, Id. 285 ; Buchanan *v.* Specht, 1 Phila. R. 252 ; Lenore *v.* Ingram, Id. 519 ; Barclay's Appeal, 1 Harris 495 ; Sloan *v.* McKinstry, 6 Id. 120 ; Act of March 20th 1810, § 2, Purd. 594 ; Kirk *v.* Aechternacht, 1 Phila. R. 426 ; Jones *v.* Evans, 1 Browne R. 207.

The opinion of the court was delivered, February 4th 1867, by

[Snyder v. Carfrey.]

WOODWARD, C. J.—This was a proceeding under the Landlord and Tenant Act of Assembly of 14th December 1863, and was brought up from the alderman into the Common Pleas by certiorari, where the proceedings were reversed, and to that judgment this writ of error was taken. It would have been a convenience to us if the court had stated the grounds upon which they reversed the proceeding before the alderman. Eight exceptions appear to have been filed, but we are left to conjecture which of them the court deemed fatal, or whether, indeed, they did not reverse on grounds not touched by the exceptions.

It seems to us, on looking through the proceedings, that they conformed substantially to the requirements of the statute, and substantial conformity is all that is required. The act was designed to give landlords a more convenient remedy to dispossess tenants than they had under the old Act of 1772. As that was more expeditious and convenient than the common-law remedies of landlords, the same liberal interpretation and administration are due to the latter statute that have always been extended to the former. Proceedings under such statutes, though summary, are not to be criticised with the extreme strictness that is applied to summary convictions under penal statutes, for the relation of landlord and tenant rests in contract, and involves mere rights of property ; and the remedies are purely civil, and not in the slightest degree penal. Very few aldermen and justices of the peace can make up records upon penal statutes which can withstand the criticisms of a certiorari, but in committing the rights of landlords and tenants to the unaided judgment of such a magistracy, the legislature meant that superior courts should exact no unattainable precision of procedure, but only such substantial compliance with the letter and spirit of the statute as would generally be within the competence of the magistrates.

The 1st exception alleges that it is apparent from the record that the complainant is not competent to maintain proceedings under the Act of 1863. Why? The only reason suggested— not in the exception, but in the argument—is, that he styles himself trustee. The answer is, that he was so styled in the complaint and warrant, and was found to be so named in the lease. If he, as trustee, was in possession of the premises, and as trustee leased them, why might he not have legal proceedings as trustee to recover them? Especially as it does not appear for whom he was trustee, and no defence was made under or in behalf of the cestui que trust. In Holt v. Martin, 1 P. F. Smith 499, opinion by Agnew, J., a trustee was attempted to be resisted by parties claiming under some of the cestui que trusts, but the attempt failed. An utter stranger to the trust cannot have more rights.

The 2d exception is, that it does not appear from the record

that three months' notice was given prior to the expiration of the term.

The alderman finds a demise of the premises for one year from the 15th May 1865, a possession of the tenant under said demise, the desire of the landlord to repossess the premises at the expiration of said term, and a demand on the 10th January 1866, upon the tenant, " *to remove and leave the same at the end of the said term of one year.*" Here was more than three months' notice to quit at the *end of the term*, a date that was as well known to the tenant as to the landlord.

The 3d and 4th exceptions relate to the service of the summons. The summons issued on 2d June 1866, to appear on the 8th, and was returned by the constable as served on the 2d " personally on defendant at his dwelling-house by leaving a copy of the original summons and making known the contents thereof." This was a sufficient service of any summons, and of course was enough for this proceeding.

The other exceptions are not worthy of a particular notice. If witnesses were not examined, the alderman found the facts from documentary proofs, which were better than witnesses, and if the judgment was not according to the Act of Assembly, the deficiency should have been specified. That it was publicly given is to be presumed from the public character of the officer. An alderman pronounces his judgments in his office, and they are public. He need not proclaim them upon the house-top, or advertise them in the papers.

We repeat that we can find nothing in this proceeding, even with the light of the exceptions, that merited correction, and therefore the judgment of the Common Pleas must be reversed, and the proceedings of the alderman affirmed, at the costs of the defendant below.