## ALANSON KNAPP v. JOSEPH R. MILLER.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF SCHUYLKILL COUNTY.

Argued February 18, 1890—Decided March 17, 1890.
[To be reported.]

1. Under the plea of not guilty, the defendant in an action of trover for
   hogs may show that the title to the hogs was vested in him by a regu-
   lar proceeding before a justice of the peace, under the act of 1705, 1
   Sm. L. 70, relative to swine suffered to run at large.
2. By said statute the jurisdiction of the justice attaches when he is " le-
   gally attested " of the requisite facts, and an affidavit signed and sworn
   to before the justice, fully stating all the jurisdictional facts, is a proper
   method of such legal attestation.
3. Such an affidavit is a part of the record of the proceeding, admissible
   in evidence as such; and that the docket entries of the justice do not
   contain the averment that the hogs were suffered to run at large, is im-
   material, if that fact be shown by the affidavit on which the proceedings
   were based.
4. As the statute does not provide for any adjudication by the justice,
   none is necessary; without it, if the record exhibit a legal attestation
   of the requisite facts, and the directions of the statute as to the course
   of procedure have been complied with, the proceedings operate to di-
   vest the title of the owner and to transfer that title to the complainant.
5. A record, otherwise regular, which shows that the public notices re-
   quired by the act were affixed to the house of the justice and " other
   public places " not described, is admissible, in connection with an offer
   to show by parol proof that the posting was done at such public places
   and in such manner as the act specifies.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, McCOLLUM and MITCHELL, JJ.

No. 82 July Term 1889, Sup. Ct.; court below, No. 223
January Term 1886, C. P.

On December 21, 1885, the defendant filed an appeal from
the judgment of a justice of the peace in an action brought by
Alanson Knapp against Joseph R. Miller, and on March 19,
1886, the plaintiff filed a declaration in trover and conversion
of certain pigs. The defendant pleaded not guilty.

At the trial on March 21, 1886, the following facts were

Statement of Facts.

shown : The defendant, Miller, on November 16, 1885, finding in his field a drove of small pigs running at large, without rings in their noses and yokes or bows about their necks, and rooting up his grain, he drove them to his stable and penned them up. The pigs were the property of the plaintiff.

In support of his defence the defendant called R. S. Heintzleman, a justice of the peace of the township wherein the defendant's land and residence were situated, who produced and identified the papers and docket entries pertaining to a proceeding before the witness in reference to the pigs in question, under the act of 1705, 1 Sm. L. 70. These proceedings commenced with the following affidavit made by the defendant Miller before Justice Heintzleman, on November 16, 1885, the affidavit being among the papers produced by the justice :

" Before me, one of the justices of the peace, in and for the county of Schuylkill, personally came Joseph R. Miller, of the township of West Penn, in the said county, and, being duly sworn according to law, doth depose and say, that upon the fifteenth day of November, A. D. 1885, he found upon his lands, situated in the township of West Penn, aforesaid, ten shoats or pigs, suffered to run at large, without rings in their noses and yokes or bows about their necks, and that the said pigs or shoats, then and there found running at large as aforesaid, were turning up the sod, etc.; that he did drive and carry away the same, and further saith not."

The remaining proceedings are sufficiently shown by the docket entries, of which the following is a copy :

" Be it remembered that on the 16th day of November, in the year of our Lord 1885, complaint was made before me, R. S. Heintzleman, a justice of the peace in and for the county of Schuylkill, on the oath of Joseph R. Miller, that the said Joseph R. Miller, upon the fifteenth day of November, 1885, found upon his lands, situate in West Penn township, ten shoats or pigs, without rings in their noses and yokes or bows about their necks, and that the said pigs or shoats were running at large, and being by him then and there found turning up the sod, etc., he did drive and carry away the same.

" Whereupon, the said R. S. Heintzleman, aforesaid, on the 16th day of November, A. D. 1885, issued his warrant to Levi George and Nathan Hunsicker, of the township of West Penn,

in the county of Schuylkill, greeting; appointing and ordering them, the said Levi George and Nathan Hunsicker, to view and make a just and reasonable appraisement of the said hogs and shoats or pigs, aforesaid, and make return of their value, number and marks unto me, as soon as conveniently it may be done after such appraisement. In obedience to the above order, dated November 16, 1885, the said Levi George and Nathan Hunsicker did make return that they have viewed the shoats or pigs therein mentioned, and did find that the number of them is ten, the said pigs or shoats are entirely white, and that they are worth twenty-five dollars in the whole. Now, November 18, 1885, I, R. S. Heintzleman, justice of the peace, did make publication thereof by a paper affixed to my house, and papers affixed to other public places, declaring the number, marks and appraisement of the aforesaid shoats or pigs, and by whom taken up; and, whereas, it is directed by the acts of assembly in such cases, that one moiety or half the value of all such shoats or pigs as may be driven and carried away as aforesaid, shall be forfeited to the person or persons, owner or owners of such lands where found and taken, and he or they shall pay unto the justice of the peace before whom attestation shall have been made as aforesaid, for the use of the owner or owners of such swine, the other moiety or half part thereof, and thereupon the property of all such swine shall be and remain in the said owner or possessor of land as aforesaid, to his and their own proper use forever; in conformity to the said act, the aforesaid Joseph R. Miller hath this day, November 18, 1885, paid unto the said R. P. Heintzleman, J. P., the sum of twelve dollars and fifty cents, being one moiety or half the aforesaid value of the said shoats or pigs so found and taken as aforesaid, for the use of the owner or owners of said swine, which said sum (first deducting out of the same all legal costs), I have in my books, ready to pay to such person as may be entitled thereto, if claimed within twelve months after appraisement as aforesaid."

The order to and return of the appraisers, and the public notice mentioned in the docket entries, were substantially in accordance with the forms therefor given in Binn's Justice, under the title "Swine," the originals of them being among the papers identified by Justice Heintzleman upon the witness stand.

Statement of Facts.

The defendant offered in evidence the whole record of the proceedings including all the original papers produced, to be followed with further evidence as to the putting up of the notices in the manner required by law; "this for the purpose of showing the forfeiture of this property to Joseph R. Miller, establishing it as his property."

Mr. Schalck: Objected to. 1. It is tantamount to a plea of property in the defendant himself, and under the issue and pleadings in this case, such evidence cannot be received. 2. Because the record that is proposed to be given in evidence is not in compliance with the provisions of the act of assembly in such cases made and provided, because among other things the docket of the justice of the peace fails to show or exhibit a case within the provisions of the act, to wit: that the act applies only where the hogs are suffered to run at large by the owner; and the record of the justice does not show such to have been the case. 3. That the allegation, such as it was, made by the complainant Joseph Miller, in these proceedings, is not within the language nor within the provisions of the act of assembly. 4. That the justice himself does not certify that he is legally advised of the matters, to wit: that the pigs were suffered to run at large, and does not appear that he himself has made any inquiry into the matters herein charged. 5. That the publication alleged to have been made is not such as is required by this act of assembly; and that the whole record itself exhibits no case within the act of assembly relating to these proceedings.

By the court: There is an omission here of that which under the decisions of the Supreme Court is essential in order to give the justice jurisdiction, and that omission, I take it, is of value to this proceeding before the justice, and we thus overrule the offer and seal you a bill and will hear you again upon it if necessary; exception.[1]

The court, PERSHING, P. J., instructed the jury, the charge not being printed in the paper-books, when a verdict was rendered in favor of the plaintiff for $60.05, upon which judgment was entered. Thereupon the defendant took this appeal assigning for error:

1. The rejection of defendant's offer.[1]

Arguments.

*Mr. W. F. Shepherd*, for the appellant:

The only question to be determined is, whether the record offered in evidence was sufficient to vest title to the pigs in the defendant. If the complaint made by him before the justice of the peace is a part of the record, the proceedings are perfect and in strict accord with the provisions of the act of 1705, 1 Sm. L. 70. Upon a certiorari, would not the complaint have come up with the record? It is the basis of the proceedings: McDermott v. McIlwain, 75 Pa. 341; and as such is a part of the record: Maxwell v. Perkins, 93 Pa. 255. In Commonwealth v. Fourteen Hogs, 10 S. & R. 393, the first case decided under the statute, the only fault found with the record was that the information was defective, although, like the present one, the proceeding was ex parte and without any adjudication by the justice. The record was admissible under the general issue, it being incumbent on the plaintiff to show title in himself, coupled with the right of immediate possession, the defendant being entitled to rebut this allegation by showing that the property had legally been converted to his own use: Blakey v. Douglass, 5 Cent. R. 274.

*Mr. A. W. Schalck*, for the appellee:

1. The plea of not guilty does not operate as a denial of the plaintiff's property in the goods in question; such a defence must be specially pleaded: 1 Addison on Torts, Wood's ed., §§ 529, 530; Hilliard on Remedies for Torts, § 3, p. 182. In a case precisely like the present, Strauser v. Kosier, 58 Pa. 496, the defendant pleaded, specially, property in himself. It is true the plaintiff must prove title in himself at the time of the conversion of the goods, and if his proofs disclose a paramount title at that time, he cannot recover: Sylvester v. Girard, 4 R. 185. But in the present case, our title at the time of the conversion was wholly unquestioned, and the defendant attempted to show a subsequent divestiture of it.

2. The proceedings offered in evidence were insufficient to divest the plaintiff's title. The act of 1705 was aimed at swine suffered to run at large, and was not intended for a case like the present where they get into a field without the fault of their owner. The record does not show that these pigs were suffered to run at large. The affidavit made by Miller was not

Arguments.

a part of the record. Maxwell v. Perkins, 93 Pa. 255, and McDermott v. McIlwain, 75 Pa. 341, cited by appellant, were cases of direct attack upon the records of magistrates by certiorari, in response to which the original precepts are required to be sent up by statute, and are thus made a part of the record for the purposes of the certiorari. Those cases are not authority for this attempt to bolster up collaterally a record defective on its face. Moreover, in these cases the complaints were by reference embodied in the judgments.

3. But even the information is insufficient in the present case, as it is not in substantial compliance with the language of the statute. It does not negative the particulars specified in the act, as to the size and character of the yokes and rings required to be worn; and, while in one place it describes the pigs as suffered to run at large, in another it speaks of them simply as found running at large, which inconsistency is not helped by the " as aforesaid," for these words plainly refer to the pigs being without rings, etc. The act of 1705 was looked on with disfavor, as unsuited to this century, as early as 1823 : Commonwealth v. Fourteen Hogs, 10 S. & R. 393. See also Mitchell v. Wolf, 46 Pa. 147, for a review of this class of legislation. The omission to show on the record that the owner of the pigs suffered them to run at large, vitiates the proceeding and is not subject to subsequent correction : Strauser v. Kosier, 58 Pa. 496 ; Shaw v. Commonwealth, 72 Pa. 68.

4. We urge, also, the other defects pointed out in our objection to the admission of the record, especially the one in relation to the failure of the justice to make any inquiry or investigation to ascertain the truth of the facts alleged by the complainant. Observe, also, that the record does not show publication by affixing a paper on some tree near the high road, as the statute requires. The record of a proceeding under a special jurisdiction must contain on its face all the necessary facts, and nothing can be left to inference, or helped out by matters dehors. The rule is so held in regard to proceedings under the landlord and tenant acts : Freytag v. Anderson, 1 Ash. 100 ; Cunningham v. Gardner, 4 W. & S. 125 ; McGee v. Fessler, 1 Pa. 126 ; Hohly v. Church, 2 Pa. 294 ; Geisenberger v. Cerf, 1 Phila. 17 ; May v. Kendall, 8 Phila. 244 ; McMullin v. McCreary, 54 Pa. 230 ; Givens v. Miller, 62 Pa. 133.

OPINION, MR. JUSTICE GREEN:

There is but one assignment of error in this case, and the only question raised by it is the admissibility of an offer of testimony made by the defendant and rejected by the court. The offer made was to give in evidence an information and record of a proceeding before a justice under the Swine Act of 1705, to be followed with further evidence as to the putting up of notices in the manner required by law. The chief objection to the offer was that the docket of the justice did not show that the hogs were suffered to run at large, and apparently the offer was rejected upon this ground. The papers which constitute the record, and also a certified transcript of the entries on the docket of the justice, are printed in full in the bill of exceptions. The information which is the commencement of the proceeding is carefully drawn, and contains an averment under oath of every fact necessary to give jurisdiction to the justice under the statute. It especially avers that the informant on the 15th day of November, A. D. 1885, " found upon his lands, situated in the township of West Penn, aforesaid, ten shoats or pigs, suffered to run at large without rings in their noses and yokes or bows about their necks," etc. It seems to be supposed that, because the certified copy of the docket entries did not repeat the statement that the hogs were suffered to run at large, the record was fatally defective and could not be received in evidence, notwithstanding the allegation on that subject in the information, on the theory that the information was not a part of the record. The court below appears to have adopted this theory, and in pursuance of it rejected the offer.

We are quite unable to agree with this view. The information is the one essential and important paper upon which the whole proceeding is founded. Most certainly it is a part, and a very necessary part of the record, and of course it cannot be disregarded in considering a question of jurisdiction. It is upon the facts there set forth that the question of jurisdiction arises, and it would be impossible to determine that question without an examination of the information and a consideration of its contents. No authority has been cited to show that it is not a part of the record of such a proceeding as this, and, in analogy to the practice in other proceedings which are out of

the usual course of the common-law pleadings, we cannot but regard it as an essential part of the record, quite as much so as an information filed by the attorney general, or a petition for a mandamus, or a writ of quo warranto, or any other special proceeding not within ordinary common-law or equitable remedies. This particular proceeding is based upon a statute which gives jurisdiction to a justice upon being made acquainted with the requisite facts, and requires no adjudication by him: Commonwealth v. Fourteen Hogs, 10 S. & R. 398. The method of acquainting the justice with the facts is not specially designated, except that he shall be legally attested of them, but we cannot imagine any more appropriate method than the one adopted in this case. It was by a paper called an "information," in which all the jurisdictional facts are fully and carefully stated, and it is signed and sworn to before the justice whose jurat is affixed. Upon the filing of this information the order to the two appraisers is issued, and that also was done under the hand and seal of the justice, and thereupon a return by the appraisers, signed and sworn to, was made and filed. Then a public notice was prepared, reciting all the proceedings, in accordance with the provisions of the act, in a most precise and complete manner, and proof was offered of its publication. But this proof also was rejected by the court.

These papers certainly constitute the record of this case, and it would be quite strange that a part of them may be rejected, and then an objection sustained that certain jurisdictional facts do not appear upon the remaining part. In both of the cases, McDermott v. McIlwain, 75 Pa. 341, and Maxwell v. Perkins, 93 Pa. 255, which were proceedings under the landlord and tenant act, the complaint before the justice was distinctly recognized as being part of the record, but it does not require the analogy of those cases to sustain a similar proposition as to this. Here the information is absolutely essential; it is the only source of the knowledge of the justice as to the facts upon which his action must be based, and, of course, it cannot be properly excluded from the consideration of the appellate court when the very question for decision is, did the necessary jurisdictional facts exist? To know whether the justice was authorized to proceed, we must necessarily know the facts upon which he did proceed; and we cannot have that knowledge

without inspecting the information upon which he acted.    In the case of Strauser v. Kosier, 58 Pa. 496, there does not appear to have been any original information signed and attested and filed before the justice, but only a recital by him in his docket entries of what had taken place; and the record was pronounced fatally defective because the fact that the hog was suffered to run at large did not appear on the record except by an amendment made five months after the proceeding was commenced, and that the record did not show any legal attestation of the justice that the hog was taken up running at large without yoke or ring or bow, but, as this defect does not exist in the present case, the decision in Strauser v. Kosier has no application.

There is no merit in the objection that the defence was not admissible under the plea of not guilty.    In Sylvester v. Girard, 4 R. 185, we held, in an action of trover and plea of not guilty, that "under his plea he (the defendant) can by law defeat the plaintiff by showing title in himself or a third person, and either will equally defeat the plaintiff's recovery."    In Blakey v. Douglass, 5 Cent. R. 274, we held that, under the general issue, the plaintiff must prove his title, general or special, coupled with the right of immediate possession, and the wrongful conversion by the defendant; and that "the defendant may rebut either of the allegations of fact on which the plaintiff's right of action depends.    For example, he may show outstanding paramount title to the property in controversy, or that he has not wrongfully converted it to his own use."    As the defendant in this case sought to show that there was no wrongful conversion to his own use, but a rightful taking according to law, he certainly was entitled to do so.

Judgment reversed, and new venire awarded.